Our third case for this morning is Martin v. Foster. I'm not going to pronounce your name. Hagopian? Yes. Okay. Good morning. Good morning. May it please the court? My name is Suzanne Hagopian, and I represent the petitioner appellant John Martin. The issues in this case have shrunk to one, and the issue is this. Applying the Strickland prejudice standard de novo was Mr. Martin prejudiced by trial counsel's failure to introduce evidence of CPG's prior false accusation. Strickland instructs the reviewing court to consider the totality of the evidence, and the evidence here consisted really of two things. Why is it de novo? The Court of Appeals of Wisconsin reaches the prejudice issue. They assume favorably to your client that there was deficient performance, so that box is checked. But then the court says, we don't see prejudice because the notes for this charge means the last of the four charges, right? He's one where the other three have dropped out. And they say the notes for this charge are enough. So I don't see why it's not deferential review as an issue that the Wisconsin court reached and addressed. And I would submit that in the posture of the cases right now, where the state has not responded to our arguments as to an unreasonable application, that the state has implicitly conceded an unreasonable application and has then skipped to the final step of the analysis, which is to determine whether, in fact, there was prejudice. And that is determined by de novo review. But they have this whole section of their brief, 2B, Martin did not incur any impermissible prejudice from trial counsels. How can that be wavered? But that argument is all addressing whether there was, in fact, prejudice. What is missing from the warden's brief is any argument that responds to Martin's contentions that there was an unreasonable application of the Strickland prejudice standard. I don't see that. I mean, it seems to me they've argued that the Wisconsin court addresses the prejudice issue. And remember, you know, we have Harrington against Richter telling us that especially with Strickland-like claims, even if it were a straight Strickland claim from a federal conviction, we give a lot of room to counsel. We understand and we look at issues as a whole and so on. But then they say we have some double deference because the question is whether the state court behaved reasonably when it found there was no prejudice. And I just am not convinced that the state has in any way forfeited or waived this argument. I mean, you can try to persuade us that it was unreasonable, but I don't see how you can do more than that. All right. Well, I will then argue that it was an unreasonable application. And our contentions really are two-pronged. One is that as the Wisconsin Court of Appeals has done in two prior cases, Sussman and Redman, that in assessing whether there was harm, the appellate court failed to consider the important value of this false accusation evidence and how it impacts the defendant's right of confrontation. Why is it so valuable given the notes? I mean, the notes are not the best. Look, the real problem with this case, I think, underneath it all, and so unfortunately you have to argue around it, is that this mandatory life sentence seems draconian. I mean, it's a very, very severe sentence for this behavior. Although he does acknowledge in his note that he's subject to it. He does acknowledge in his note that he's facing that if it happens. So whether that factors in or not. But here you are. I mean, you have to explain why the Wisconsin courts couldn't have looked at those notes, the one especially that says, you know, my wife is gone for the next hour and a half, and the federal magistrate judge says, you know, it doesn't take too much of a leap to see this. It's an invitation. Come on over. The coast is clear. And if that's true, then how does her past behavior factor in? I have a couple of responses. One is that returning to our unreasonable application argument, our second contention is that the lower court conflated a sufficiency of the evidence standard with the Strickland prejudice standard. They're very different. We're not contending here that the evidence was insufficient. No, I understand that, but I think, I mean, it's very hard to articulate this, but it seems to me both the state court and then the federal court below were saying, our confidence in the outcome of this proceeding, which I totally grant you, does not require 51% or 98% or anything else. It's way lower than that. The court's made that clear. But they're saying our confidence in this result is not shaken by the exclusion of this evidence for count four, for the count that rests on the notes. And what the Court of Appeals said is that the notes were sufficient evidence to prove. And I think they're missing the point here that under a sufficiency analysis, the court has to look at the evidence in the light most favorable to the prosecution. It has to accept any reasonable inference that supports the jury's verdict. Under a Strickland prejudice test, the court is looking at the totality of the evidence and should consider all reasonable inferences from the evidence. And I would submit a reasonable inference from the evidence presented to this jury was that the notes are too ambiguous to prove the crime of enticement, but it was the combination of the notes plus CPG's testimony about prior oral invitations into his apartment for sex that basically sealed the deal and allowed them to find Mr. Martin guilty beyond a reasonable doubt. I think this court needs to look at how the state chose to try to prove this case. Yes, there is a reference in the note to, My wife has gone for one and a half hours. There are four notes that come after that. Nowhere in those notes does Mr. Martin direct CPG to go anywhere, nor is there any express invitation to go anywhere. In fact, in note number two, he makes reference to, Well, I'm thinking long term. By the last note, he's saying, Basically, if you're not interested, that's cool. I think the jury looking at the notes, it is a reasonable inference that he was trying to lure her into the apartment, but this isn't a review of the sufficiency of the evidence. No, it isn't, but it is a question whether the Wisconsin court was unreasonable when it said a jury could look at these notes alone and find him guilty, so we don't think that the exclusion of this evidence shakes our confidence in the verdict. But I would submit that that, Suppose they had written that. I mean, aren't you asking us just to tell them to write a better opinion? Well, except that the words matter. They said so little in their opinion, they really matter. The notes were sufficient in and of themselves. That's not how the state chose to prove this case. What do you make of the note that she sent back? Which one? Well, you're being an ass and so on about the sexual conduct they had previously. One of the comments the Court of Appeals made was that there was a reference, again, in that first note to not going to continue to try to be with you, and that supports this notion that these oral solicitations really did happen. I would point out, though, that he was also on trial for an enticement at the laundromat. That occurred before this incident. That could well be what was referred to in the notes, and the jury found him not guilty on that count. Okay. Why don't you save your last minute, and we will hear what you have to say. Mr. Wren. Thank you, Your Honor, and may it please the Court. My name is Christopher Wren. I'm an assistant attorney general with the Wisconsin Department of Justice and appear on behalf of Warden Brian Foster. I think one of the important things here, I'd be content to rest on my brief, frankly, but I do want to make a point here about what the purpose of this prior fault accusation evidence was. It was solely to provide a basis for challenging, for explaining the motive for her to make a supposedly false allegation here. Defense counsel got that into the record without this evidence. He cross-examined her, and she admitted that her motive was basically the same thing that had been the motive for the previous accusation. So there was really no need for this evidence. This would have been superfluous evidence in any event because he already got it out. So the question, I guess, that your opponent is trying to raise is that the one thing that you don't see in these notes is just the flat-out statement, come to my apartment, or let's meet in the place where you're babysitting, or let's go to a local motel, or whatever. You don't see any go-to-a-place invitation, and I believe that's a requirement under the Wisconsin law. Right, and the evidence was sufficient, and this is where the sufficiency comes in. The evidence was sufficient for the jury to conclude that there were two places that they could have gone on this. One was to his apartment, and one was to the apartment where she was babysitting, and that's based on the fact that they stipulated, and the judge instructed the jury, about the meaning of secluded place. So basically, it was all narrowed down from the whole world down to these two particular locations. And so the only inference that they could draw on that was that when he said, my wife is gone for an hour and a half, that what he was intending was, come on over to my place. And there was certainly sufficient evidence for that, and it's the sufficiency that links in with whether we still believe that without the evidence of the prior accusation, we can treat the verdict as reliable at this point, which is basically a requirement under Strickland. And I don't see anything in this record that suggests that any court had any concern about whether the verdict was reliable, and whether the absence of this evidence about the previous false accusation. So is there any way that this evidence of the previous false accusation would have caused the jury to interpret that my wife is gone for an hour and a half sentence differently? I don't think so, because the only purpose of it was to explain her motive for supposedly lying in this instance. But he's the one who wrote that, right? And that's the point, is that his notes themselves are the proof of the guilt. And her credibility, as the court said, as our state court said, certainly the trial court said, this was not relevant at all, because her credibility was not at issue on this fourth count. And there's a stipulation, right, that he did, in fact, write these notes? Yes, Your Honor, he stipulated that he wrote those notes. There's no dispute that she received the notes. In fact, as Judge Connie has noted, there was a response. Right, she writes on a couple of them. Right, she writes back. And acknowledging that they had prior sexual contact. Well, I don't know if they had prior sexual contact. I don't know if he... Well, one of the notes... Okay, I don't call her notes. She said, I was drunk. Yeah, okay, I was not paying attention to her notes, because the main concern has been with the evidence of the prior false accusation. We don't need to get into the definition of what counts as sexual activity, so we'll focus on his. But the basic point is that the reason that the defendant wanted this evidence in was to deal with the issue of motive, why she would have a reason to lie. And you think that's primarily the laundromat count, the motive? No, they wanted it for both, I think. But the motive was going to her credibility, but her credibility was at issue in the laundromat count, not in the written notes count. And he was acquitted on the written notes on the laundromat count. And the point that I made in the brief was, any time there was no corroboration of her testimony, they acquitted him. When they had corroboration, which came from these notes, they convicted. The evidence of the prior false accusation would not have made a difference here, because it only went to the question of whether she was lying about whatever it was in relation to the written notes charge. And all that evidence was there from his notes. So I don't see anything under the reliability standard, under the prejudice standard of Strickland, that the absence of her testimony about the prior false accusation made any difference. He got that in anyway, if nothing else. So as regards to any other argument that I would have on that, I think I laid it out in my brief. I think I don't really have anything to add to that.  Thank you very much, then. And I believe you have a minute, Ms. Hagopian. Just a quick point. You know, it's interesting, the state maintains that CPG's credibility not in play with respect to the note-writing count. Certainly not what the prosecutor told the jury at trial. The prosecutor said, I concede these notes don't say anything about where this is to occur, but we have her testimony about these prior invitations into his apartment. The prosecution sure thought that her credibility was at play. And that's why the prior false accusation really does create a reasonable probability that there may have been a different result. I want to just also highlight that the crime here, child enticement, required proof that Mr. Martin did acts that demonstrate unequivocally that he intended to cause CPG to go to a particular place. And unequivocally means that no other inference or conclusion can reasonably and fairly be drawn from the defendant's acts. I would submit the notes say quite a lot about his interest in this 15-year-old girl. They don't say a whole lot about where the desired sexual contact was to occur. Thank you. All right, thank you very much. And thanks to the state as well. We will take the case under advisement.